IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **COASTAL HOLDING & LEASING, INC.** : | | |
| Plaintiff, : | | |
| : | | |
| v. : | | CIVIL NO. L-05-405 |
| : | | |
| **MARYLAND ENVIRONMENTAL** : | | |
| **SERVICE** : | | |
| Defendant. : | | |

## MEMORANDUM

**I.     INTRODUCTION**

This case tests whether the Maryland Environmental Service ("MES"), a corporation created by state statute and subject to extensive state oversight, is immune to suit in federal court under the Eleventh Amendment to the United States Constitution. Although the issue is not free from doubt, this Court, applying the prescribed test, concludes that MES is an instrumentality of the State of Maryland. Accordingly, it is immune from suit in federal court.[1] In a separate order, this Court will grant MES's motion to dismiss.

The Maryland General Assembly created MES, a corporation, by statute in 1970.[2] According to the "purpose" section of the legislation, MES's mission is "to assist with the preservation, improvement, and management of the quality of air, land, and water resources, and to promote the health and welfare of the citizens of the State. . ."[3] One of its projects is the Poplar Island Dredged Material Facility.[4]

---

[1] When a federal court dismisses a case on jurisdictional grounds, Maryland law (in some instances) provides a limitations grace period for refiling the suit in State court. See Maryland Rule 2-101 (b) (2005).

[2] Md. Code Ann., Nat. Res. § 3-101 et seq.

[3] Id. § 3-102(a).

[4] By way of background, Poplar Island, which was once on the verge of disappearing through erosion, is located some 34 miles south of Baltimore Harbor. A coalition of state and federal

In its complaint, Coastal Holding & Leasing, Inc. ("Coastal") alleges that in December, 2001, it leased a "crewboat" to MES for use at Poplar Island. The lease called for a one-year rental at an annual price of $119,000, with extensions at $9,000 per month.[5] Coastal contends that MES breached the lease by failing to maintain the boat in good working order, by failing to pay the cost of repairing the boat, and by refusing to return the boat after the lease expired.[6] Coastal's complaint alleges four causes of action in contract and in tort: (i) breach of contract; (ii) breach of implied covenant of good faith and fair dealing; (iii) conversion, and (iv) tortious interference with prospective advantage.

The complaint asserts admiralty jurisdiction under 28 U.S.C. §1333 because the matter involves a maritime contract. The complaint also asserts diversity jurisdiction under 28 U.S.C. § 1332. Coastal, a citizen of Florida, claims that MES is a citizen of Maryland and that the amount in controversy exceeds $75,000.

Claiming sovereign immunity,[7] MES moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(2).[8] Coastal opposed the motion. On January 12, 2006, the Court ordered additional briefing on one aspect of the test that the Fourth Circuit created to decide sovereign immunity disputes. MES briefed the issue. Coastal, however, failed to submit a brief

---

agencies is dredging approximately 40 million cubic yards of spoil from the shipping channels approaching Baltimore and depositing them on the island. Poplar Island, when rebuilt, will comprise 1,100 acres. http://www.nab.usace.army. mil/projects/Maryland/PoplarIsland (last visited March 8, 2006). MES does not describe specifically what its role is at the Poplar Island Dredged Material Facility.

[5] Complaint, Docket No. 1, at 2 (February 10, 2005).

[6] Coastal alleges that MES placed a lock on the boat so that Coastal cannot take possession of it. Id. at 5 (February 10, 2005).

[7] MES also asserts that the suit lacks diversity jurisdiction because it is not a "citizen" of Maryland under 28 U.S.C. § 1332. See discussion at III. B., *infra*.

[8] MES did not dispute that this case would, but for sovereign immunity, fall under federal maritime jurisdiction. Sovereign immunity extends to *in personam* admiralty claims. See Ex Parte New York, 256 U.S. 490, 498 (1921).

despite the Court's *sua sponte* order reminding Coastal that its brief was overdue and granting Coastal additional time. From its silence, the Court can only assume that Coastal has lost interest in contesting MES's motion to dismiss. The Court will analyze and decide the issue nonetheless.

## II.    STANDARD

In considering a Rule 12(b)(1) motion to dismiss in which the defendant challenges the plaintiff's jurisdictional allegations, the Court may look beyond the complaint to determine if there are facts to support those allegations. See Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). The trial court may consider "evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment." Id.; see also Star Scientific Inc. v. R.J. Reynolds Tobacco Co., 174 F. Supp. 2d 388, 392 (D. Md. 2001). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Mortensen v. First Federal Savings & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).[9]

Subject matter jurisdiction is a threshold question. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Env't., 523 U.S. 83, 94 (1998) (citing Ex parte McCardle, 74 U.S. 506, 514 (1859)).

## III.   ANALYSIS

---

[9] See also Adams, 697 F.2d at 1219 ("[T]he court in a 12(b)(1) hearing weighs the evidence to determine its jurisdiction."). The plaintiff bears the burden of proving that subject matter jurisdiction exists. Id.

A. <u>Sovereign Immunity</u>

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State. . ." U.S. Const. amend. XI.[10]  The immunity from suit that the Eleventh Amendment confers extends not only to suits against a State *per se* but also to suits against agents and instrumentalities of the State.  <u>Cash v. Granville Cty Bd. of Ed.</u>, 242 F.3d 219, 222 (4th Cir. 2001).  The Eleventh Amendment does not, however, cover local governments such as counties and municipalities. <u>Id.</u>  Given the structural complexity of state and local governments, it is sometimes difficult to tell whether an agency is "properly characterized as an arm of the state, or of the local government."  <u>Harter v. Vernon</u>, 101 F.3d 334, 337 (4th Cir. 1996).

The Fourth Circuit Court of Appeals has developed a four-part test for the trial courts to use in deciding the question: (i) "whether a judgment against the governmental entity would have to be paid from the State's treasury"; (ii) "the degree of control that the State exercises over the entity or the degree of autonomy from the State that the entity enjoys"; (iii) "the scope of the entity's concerns - - whether local or statewide - - with which the entity is involved," and (iv) "the manner in which State law treats the entity."  <u>Cash</u>, 242 F.3d at 224 (citing <u>Harter</u>,101 F.3d at 337); <u>Gray v. Laws</u>, 51 F.3d 426, 434 (4th Cir. 1995); <u>Ram-Ditta v. Md. Nat'l Park & Planning Cmm'n</u>, 822 F.2d 456, 457-58 (4th Cir. 1987)).

---

[10]  The Supreme Court has long held that the Eleventh Amendment also preclude suits against a state by one of its own citizens.  <u>See</u> <u>Edelman v. Jordan</u>, 415 U.S. 651, 662-63 (1974).

The Fourth Circuit has assigned primary importance to the "State treasury" factor, which the trial court must analyze first.  Cash, 242 F.3d at 223.  If the State treasury would be legally responsible for paying an adverse judgment, then the defendant entity is immune.  Id.  If the State treasury would not be responsible for the judgment, then the trial court should resort to the other three factors.[11]  Id. at 224.

### 1. State Treasury

As mentioned, the parties' initial briefs did not supply all of the information needed to apply the test.  Accordingly, on January 12, 2006, the Court issued an order advising the parties that "additional briefing is necessary on the issue of whether a judgment against the governmental entity would have to be paid from the State's treasury."[12]  On January 24, 2006, MES timely filed its supplemental brief , which was supported by three affidavits.[13]  Coastal did, not, however, file a supplemental brief.

On February 10, 2006, the Court issued a second order reminding Coastal of its unmet obligation.  The order specifically reiterated that the State treasury issue was "central," that MES had filed its supplemental brief on time, but that Coastal had not.  Nevertheless, because of the "importance of this matter," the Court *sua sponte* gave Coastal an extension until Friday, February 17, 2006 to file its supplemental brief.  The order concluded by advising Coastal that if it failed to respond, "the Court will assume that the plaintiff concedes this issue, and will rule on the motion to dismiss accordingly."[14]

---

[11] The test, therefore, is applied in two parts.  First the Court looks at the "State treasury" factor.  If it is not dispositive, the Court then moves on to the rest of the four-part test, "keep[ing] the State treasury factor in the calculus. . ."  Cash, 242 F.3d at 224.
[12] Docket No. 5.
[13] Docket No. 6.
[14] Docket No. 7.

In its supplemental brief, MES describes that its funding comes primarily from the State. According to its papers, MES receives approximately 10% of its operating budget from private sector clients and the sale of recycled products. It receives approximately 42% from local governments.[15] The remainder (roughly half) comes from other state agencies through inter-agency agreements.[16]

MES represents that the State must stand behind the agency's contract obligations. According to the agency's attorneys, Maryland's Governor must include in the budget money sufficient to pay contract claims successfully asserted against the State.[17] Were a court of law to enter a judgment against it, the agency contends, then the Governor would be obliged "to include money in the budget bill to satisfy the judgment" against MES.[18]

MES likewise represents that the State must stand behind the agency's tort liabilities. The agency's attorneys state that under the Maryland Tort Claims Act, MES can be sued in State court.[19] Claims are paid from the State Insurance Trust Fund, which the State Treasurer administers.[20]

MES's assertions that the Treasury of the State of Maryland is ultimately liable for any judgments entered against it in a contract or tort action are unchallenged. MES has, therefore, satisfied the first, and most important, factor in the Fourth Circuit's test. Although MES is

---

[15] MES's supplemental brief says 42% from "local governmental projects," which the Court interprets to mean projects that MES undertakes for local governments.
[16] Def.'s Brief on the Issue of Payment of Judgment from the State Treasury, Docket No. 6, at 3, 6 (January 24, 2006).
[17] Id. at 2-3 (citing Md. Code Ann., State Gov't § 12-203).
[18] Id. at 3.
[19] Id. at 1 (citing Md. Code Ann., State Fin. and Procurement § 9-102(a). MES is covered under the Maryland Tort Claims Act. Id. at 2 (citing State Gov't § 12-101(a)(2)(iv)).
[20] Id. at 2 (citing Md. Code Ann., State Fin. and Procurement § 9-105(c)). See also § 9-104(a)(2).

entitled to sovereign immunity on the basis of the State treasury analysis alone, the other three factors in the Fourth Circuit's test also weigh in favor of sovereign immunity.

### 2. Autonomy

With this test the Court looks at the degree of control that the State exercises over the entity. Cash 242 F.3d at 225.  The General Assembly did not merely create the agency and leave it to operate as it saw fit.  The MES enabling act is a comprehensive statute that provides for extensive governmental oversight.[21]  The Governor appoints the Director, whom the MES Board cannot unseat without the Governor's approval.[22]  The Governor also appoints several other members of the MES Board.[23]  MES is subject to the provisions of the State Finance and Procurement Article and the Administrative Procedure Act.[24]   MES must submit a budget and annual financial reports to the State,[25] and it is subject to State audit.[26]  The Attorney General is the legal advisor to MES, and enforces compliance with the enabling statute.[27]

It is true that MES enjoys a degree of autonomy from the State.  On its website, for example, the agency describes itself as a "self-supporting, not-for-profit public corporation that works with both governmental and private sector clients. . ."[28]  MES has a perpetual corporate

---

[21]   Md. Code Ann., Nat. Res. § 3-101 *et seq*.
[22]   Id. § 3-103(b)(1)(i).
[23]   Id. § 3-103(b)(3).  The Governor appoints all members with the "advice and consent of the Senate."  The Director appoints the Deputy Director, Secretary, and Treasurer with the approval of the Governor.
[24]   Id. § 3-103(g).
[25]   Id. § 3-103(i); § 3-126(h).
[26]   Id. § 3-126(e).
[27]   Id. § 3-103(f).  In Ram Ditta, the court held that the Park Commission was not entitled to sovereign immunity.  In its analysis, the court found it significant that county attorneys represented the Park Commission because the Attorney General represents state agencies.  822 F.2d at 458-59.
[28]   See http://www.menv.com/whoweare.shtml. (Last visited March 1, 2006).

existence, and can sue and be sued.[29] It is also exempt from certain provisions of the State Personnel Management System.[30]

Despite these indicia of independence, the oversight that the State provides "illustrates a nexus with the State sufficient to render" MES an arm of the State. Miranda v. Univ. of Maryland, No. AW-04-2609, 2005 U.S. Dist. LEXIS 3944, at *16 (D. Md. Feb. 9, 2005) (finding that the University of Maryland is entitled to immunity). Accordingly, the "autonomy" factor cuts in favor of sovereign immunity.

### 3. Scope of Concerns

As to the scope of concerns, the Court inquires whether an entity's function is "classified as typically state or unquestionably local." Harter, 101 F.3d at 341 (citing Hess, 513 U.S. at 45). Coastal contends that because MES works with counties, municipalities, and water districts, its concerns are local in nature.[31] This argument is unavailing. By statute, MES has a statewide mission to manage and improve Maryland's waste and water management systems. While MES often works with local entities on an individual basis, its function cannot be considered local, as Coastal contends.[32]

### 4. State law

Analyzing how the entity is treated as a matter of State law necessarily overlaps with the "autonomy" inquiry. Cash 242 F.3d at 226. The enabling statute defines MES as "an

---

[29] Md. Code Ann., Nat. Res. § 3-104.
[30] Id. § 3-103.2.
[31] Pl.'s Memorandum of Law in Opposition to Maryland Environmental Service's Motion to Dismiss, Docket No. 4, at 5 (April 29, 2005).
[32] In finding that the Park Commission was not an arm of the State, the court in Ram Ditta noted that the Park Commission's "jurisdiction" was limited to Prince George's and Montgomery Counties. 822 F.2d at 459. MES's "jurisdiction," however, is statewide.

instrumentality of the State" whose purpose is "the performance of an essential governmental function of the State."[33]  Maryland law designates MES as a unit of the Department of Natural Resources,[34] and its employees as "State personnel" covered by the Maryland Tort Claims Act.[35]  As already mentioned, the Governor appoints the MES director and other members of the board "with the advice and consent of the Senate,"[36] and the Attorney General is MES's legal advisor.[37]  The clear language of the statute treats MES as a state agency rather than a local, autonomous entity.

Balancing these four factors, the Court concludes that MES is an arm of the State entitled to sovereign immunity.  Accordingly, the federal courts lack jurisdiction over Coastal's claims, which must be referred to the State courts.

      B.      Diversity Jurisdiction

For the Court to exercise its diversity jurisdiction, the plaintiff and defendant must be "Citizens of different States."  28 U.S.C. 1332(a)(1).  An arm of the State, however, is not, for jurisdictional purposes, considered to be a citizen of the State.  Moor v. Alameda, 411 U.S. 693, 717 (1973).  Whether an entity is an arm of the State for purposes of diversity jurisdiction involves the same standards as are at play in the sovereign immunity analysis.  See Maryland Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 260-61 (4th Cir. 2005).  Because the Court finds that MES is entitled to sovereign immunity, it follows that MES is not a citizen of the State of Maryland.  Accordingly, diversity jurisdiction is lacking.

---

[33] Id. § 3-103(a).
[34] Id.
[35] Md. Code Ann., State Gov't. § 12-101.
[36] Md. Code Ann., Nat. Res. § 3-103(b)(1)(i) and (3).
[37] Id. § 3-103(f).

### III.     CONCLUSION

For the reasons stated herein, the Court finds that MES is entitled to sovereign immunity and is not a citizen of the State of Maryland for the purposes of diversity jurisdiction. The motion to dismiss is, therefore, granted, and the case is dismissed.


Dated this 13th day of March, 2006.

>                          /s/
> Benson Everett Legg
> Chief Judge